**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PHILLIP BUCKINGHAM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. _____ ) |
| EXPRESS SCRIPTS HOLDING COMPANY, TIMOTHY WENTWORTH, MAURA C. BREEN, WILLIAM J. DELANEY, ELDER GRANGER, NICHOLAS J. LAHOWCHIC, THOMAS P. MAC MAHON, KATHLEEN M. MAZZARELLA, FRANK MERGENTHALER, WOODROW A. MYERS, JR., RODERICK A. PALMORE, GEORGE PAZ, WILLIAM L. ROPER, SEYMOUR STERNBERG, HALFMOON PARENT, INC., HALFMOON I, INC., HALFMOON II, INC., and CIGNA CORPORATION, | ) **CLASS ACTION COMPLAINT** ) **FOR VIOLATIONS OF** ) **SECTIONS 14(a) AND 20(a) OF** ) **THE SECURITIES EXCHANGE** ) **ACT OF 1934** ) ) ) ) **JURY TRIAL DEMAND** ) ) ) ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiff Phillip Buckingham ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Express Scripts Holding Company ("Express Scripts" or the "Company") against Express Scripts' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a),

1

and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company

to Cigna Corporation through its wholly-owned subsidiary Halfmoon Parent, Inc., and its wholly-

owned subsidiaries Halfmoon I, Inc. and Halfmoon II, Inc. (collectively "Cigna").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading registration statement (the "S-4") to be filed with

the Securities and Exchange Commission ("SEC") on May 16, 2018. An amended registration

statement (the "S-4/A") was filed with the SEC on June 20, 2018. The S-4/A recommends that

Express Scripts stockholders vote in favor of a proposed transaction (the "Proposed Transaction")

whereby Express Scripts will be acquired by Cigna.  The Proposed Transaction was first disclosed

on March 8, 2018, when Express Scripts and Cigna announced that they had entered into a

definitive merger agreement (the "Merger Agreement") pursuant to which Cigna will acquire all

of the outstanding shares of common stock of Express Scripts for $48.75 in cash and 0.2434 shares

of Halfmoon Parent, Inc. stock per share of Express Scripts (the "Merger Consideration").  The

deal is valued at approximately $67 billion (including debt) and is expected to close by the end of

2018.

3.      The S-4/A is materially incomplete and contains misleading representations and

information in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the S-4/A

contains materially incomplete and misleading information concerning the sales process, financial

projections prepared by Express Scripts management, as well as the financial analyses conducted

by Centerview Partners LLC ("Centerview") and Lazard Freres & Co. LLC ("Lazard"), Express

Scripts' financial advisors.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin

Defendants from taking any steps to consummate the Proposed Transaction, including filing any

further amendments to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to Express Scripts' stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Express Scripts's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Express Scripts.

6.      Defendant Express Scripts is a corporation organized and existing under the laws of the State of Delaware.  The Company's principal executive offices are located at One Express Way, St. Louis, Missouri, 63121.  Express Scripts common stock trades on NASDAQ under the ticker symbol "ESRX."

7.      Defendant Timothy Wentworth has been President of the Company since February 2014, Chief Executive Officer since May 2016, and a director of the Company since June 2015.

8.      Defendant Maura C. Breen has been a director of the Company since 2004.

9.      Defendant William J. DeLaney has been a director of the Company since 2011.

10.      Defendant Elder Granger has been a director of the Company since 2015.

11.      Defendant Nicholas J. LaHowchic has been a director of the Company since 2001.

12.      Defendant Thomas P. Mac Mahon has been a director of the Company since 2001.

13.      Defendant Kathleen M. Mazzarella has been a director of the Company since June 2017.

14.      Defendant Frank Mergenthaler has been a director of the Company since 2009.

15.     Defendant Woodrow A. Myers, Jr. has been a director of the Company since 2007.

16.     Defendant Roderick A. Palmore has been a director of the Company since 2014.

17.     Defendant George Paz has been a director of the Company since 2004 and Chairman of the Board since 2006. Paz served as Chief Executive Officer of Express Scripts from April 2005 to May 2016.

18.     Defendant William L. Roper has been a director of the Company since 2012.

19.     Defendant Seymour Sternberg has been a director of the Company since 1992.

20.     Defendants Wentowrth, Breen, Delaney, Granger, LaHowchic, Mac Mahon, Mazzarella, Mergenthaler, Myers, Palmore, Paz, Roper and Sternberg are collectively referred to herein as the "Board."

21.     Defendant Cigna Corporation is a Delaware corporation based in Bloomfield, Connecticut.

22.     Defendant Halfmoon Parent, Inc. is a Delaware corporation and wholly owned subsidiary of Cigna Corporation.

23.     Defendant Halfmoon I, Inc. is a Delaware corporation and a wholly owned subsidiary of Halfmoon Parent, Inc.

24.     Defendant Halfmoon II, Inc. is a Delaware corporation and a wholly owned subsidiary of Halfmoon Parent, Inc.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

26.     Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iii) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Express Scripts common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

29.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of March 7, 2018, Express Scripts had approximately 561.2 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file an amendment to the S-4 with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  Express Scripts is Sold to Cigna for an Inadequate Price

30.     Express Scripts is the largest independent pharmacy benefit management ("PBM") company in the United States. PBM companies process retail pharmacy claims, provide home delivery pharmacy services, and network, formulary and utilization management. Express Scripts distributes prescription drugs to members of health insurers, employers, managed care organizations, and hospitals.

31.     The Company has experienced steady growth, with net income exploding from $1.8 billion in fiscal year 2013 to $4.5 billion in fiscal year 2017. The Company's EBITDA grew as well, from $5.9 billion in fiscal year 2013 to $7.2 billion in fiscal year 2017. The results for just fiscal year 2017 show the sustained and steady growth of Express Scripts. On April 24, 2017, the Company released financial results for its first quarter of 2017. The Company announced net income of $546.3 million and EBITDA of $1.4 billion. On July 25, 2017, the Company announced financial results for its second quarter of 2017, noting net income of $801.8 million and EBITDA of $1.8 billion. Third quarter results were released on October 24, 2017, when the Company announced net income of $841.7 million and EBITDA of $1.9 billion. And the financial results for fourth quarter of 2017 were released on February 27, 2018, when the Company announced net income of $2.3 billion and EBITDA of $2.0 billion (which included the results from eviCore, a company Express Scripts acquired in December 2017).

32.     Despite the Company's positive financial results, the Board agreed to the Proposed Transaction on March 8, 2018.

7

33.     The Merger Consideration agreed to by the Board does not adequately compensate stockholders. Analysts had set price targets as high as $101.00 per share for the Company. And the analyses of both Cigna's and the Company's financial advisors illustrate that the Merger Consideration may not be high enough. For example, Centerview's *Selected Trading Company Analysis* implied a per share equity value for Express Scripts as high as $104.00; the *Selected Precedent Transactions Analysis* implied a per share equity value for Express Scripts as high as $121.00; and the *Discounted Cash Flow Analysis* implied a per share equity value as high as $109.00. Lazard's *Discounted Cash Flow Analysis* implied a per share equity value for Express Scripts as high as $109.00, while the illustrative premia paid analysis implied a per share equity value of $109.00. And Cigna's financial advisor, Morgan Stanley, performed analyses that implied equity values for Express Scripts that are higher than the Merger Consideration. Morgan Stanley's *Comparable Company Analysis* implied a per share equity vale for Express Scripts as high as $105.50; the *Precedent Transactions Analysis* implied a per share equity value for Express Scripts as high as $158.50; and the *Discounted Equity Value Analysis* implied a per share equity value as high as $140.50 per share.

**B.  Express Scripts' Officers Stand to Receive Benefits Unavailable to the Class**

34.     The S-4/A acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest.

35.     Stock options, restricted stock units and performance share units that have been awarded to and are held by Express Scripts' executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount. The treatment of these equity awards, in addition to benefits provided to executive officers through their respective employment agreements and the Change in Control Severance Plan, will create a

windfall for Express Scripts' executive officers that is unavailable to the common stockholders. As demonstrated in the following chart, the executive officers of Express Scripts in total stand to receive over $102 million, if they are let go without "cause" after the Proposed Transaction closes:

| Name | Cash | Equity | Perquisites / Benefits | Total |
|------|------|--------|------------------------|-------|
| Timothy Wentworth | $13,413,698 | $40,295,962 | $68,691 | $53,778,351 |
| James Havel | $4,600,274 | $7,141,891 | $23,852 | $11,766,017 |
| Christine Houston | $4,200,000 | $9,201,849 | $23,198 | $13,425,047 |
| Everett Neville | $3,996,576 | $8,083,329 | $36,120 | $12,116,025 |
| David Queller | $3,208,220 | $7,696,081 | $21,658 | $10,925,959 |

36.     The members of the Board and the executive officers stand to gain handsomely even if they stay on after the Proposed Transaction closes. In total, the executive officers and Board members will obtain more than $217.8 million from options, restricted stock units and their share ownership once the Proposed Transaction is completed.

**C.  The Preclusive Deal Protection Devices**

37.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

38.     By way of example, § 7.4(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 7.4(a) further demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

39.     The Merger Agreement includes an extremely broad definition of "acquisition proposal" that, in combination with the other preclusive deal protection provisions, severely limits opportunities for Express Scripts. Section 7.4(a) defines an acquisition proposal as:

> (A) a merger, consolidation, business combination, recapitalization, binding share exchange, liquidation, dissolution, joint venture or other similar transaction involving the Company, (B) any acquisition of more than 20% of the outstanding Company Common Stock or securities of the Company representing more than

20% of the voting power of the Company, (C) any acquisition (including the acquisition of stock in any Subsidiary of the Company) of assets or businesses of the Company or its Subsidiaries, including pursuant to a joint venture, representing more than 20% of the consolidated assets, revenues or net income of the Company (as measured by fair market value as determined in good faith by the Board of Directors of the Company), (D) any tender offer or exchange offer that if consummated would result in any person beneficially owning more than 20% of the outstanding Company Common Stock or securities of the Company representing more than 20% of the voting power of the Company, or (E) any combination of the foregoing types of transactions if the sum of the percentage of consolidated assets, consolidated revenues or earnings and Company Common Stock (or voting power of securities of the Company other than the Company Common Stock) involved is more than 20%.

That is, Express Scripts cannot solicit or consider any transaction that involves 20% of Express Scripts' stock, voting power or finances without being in breach of the Merger Agreement.

40.    Whether or not an "acquisition proposal" involves a change in control of the Company, the Board consented to provisions in the Merger Agreement that limit the Company. Section 7.4(b) states that the Company can provide information to another party or engage in discussions only if the acquisition proposal would result in a transaction that involves 50.1% of Express Scripts' stock or finances. So a transaction that would involve 20% of the Company's stock, and would be better for Express Scripts stockholders than the Proposed Transaction, cannot be considered at all by the Board without constituting a breach of the Merger Agreement. Even then, such a transaction is not a valid basis for terminating the Merger Agreement, as discussed in § 9.1. Only an acquisition proposal that involved at least 50.1% of Express Scripts stock or finances, if determined by the Board to be a superior offer, can trigger termination of the Merger Agreement.

41.    Where the Board is presented with an acquisition proposal, § 7.4(e) of the Merger Agreement dictates that the Company must notify Cigna of the acquisition proposal or request for information. Section 7.4(e) further requires Express Scripts to provide Cigna with the identity of the party making the proposal, the material terms of the acquisition proposal and copies of the

acquisition proposal. Should the Board determine that the acquisition proposal constitutes a "superior" proposal, § 7.4(d) requires that the Board grant Cigna five (5) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. These provisions eliminate any leverage that the Company holds by receiving the "superior" proposal. No rival bidder is likely to emerge and act as a stalking horse for Express Scripts, because the Merger Agreement unfairly assures that any "auction" will favor Cigna and allow Cigna to piggy-back upon the due diligence of the foreclosed second bidder.

42.      In addition, pursuant to §§ 9.2(d) and (f) of the Merger Agreement, Express Scripts must pay Cigna a termination fee of $1.6 billion if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the stockholders with a superior offer.

43.      Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Cigna's inadequate offer price.

**D.  The Materially Incomplete and Misleading S-4/A**

44.      The Exchange Act requires that the Individual Defendants disclose all material information regarding the Proposed Transaction to Express Scripts stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

45.      On June 20, 2018, Defendants filed the S-4/A with the SEC. The purpose of the S-

4/A is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Express Scripts stockholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

46.    The S-4/A discloses management-prepared financial projections for the Company which are materially misleading. The S-4/A indicates that, in connection with the rendering of Centerview's fairness opinion, Centerview reviewed "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Express Scripts, including the Express Scripts management forecasts." Similarly, Lazard reviewed "the Express Scripts management forecasts and other data provided to Lazard by Express Scripts relating to the business of Express Scripts" when rendering its fairness opinion. Accordingly, the S-4/A should have, but failed to, provide certain information in the projections that Express Scripts' management provided to the Board and the Company's financial advisors.

47.    Notably, Defendants failed to provide the financial projections for Express Scripts for fiscal years 2018 to 2027 for: (a) depreciation and amortization; (b) EBIT; (c) core EBIT; (d) income tax expense; (e) core net income; (f) core adj. EPS; (g) capital expenditures; (h) changes in net working capital; (i) stock-based compensation expense; (j) restructuring charges; (k) after-tax non-controlling interest; and (l) core unlevered free cash flow. This omitted information is necessary for Express Scripts stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

12

48.    Both Centerview and Lazard also reviewed financial projections for Cigna. Yet the S-4/A fails to disclose the financial projections for Cigna for fiscal years 2018 to 2022 for: (a) total revenue; (b) depreciation and amortization; (c) EBIT; (d) income tax expense; (e) capital expenditures; (f) changes in net working capital; (g) stock-based compensation expense; and (h) surplus retained in the business to support business growth. As with the Express Scripts financial projections, the omitted information is necessary for Express Scripts stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Centerview's Financial Analyses*

49.    With respect to the *Selected Trading Company Analysis (Express Scripts)*, the S-4/A fails to disclose whether Centerview performed any type of benchmarking analysis for Express Scripts in relation to the selected public companies. With respect to the *Selected Trading Company Analysis (Cigna)*, the S-4/A fails to disclose whether Centerview performed any type of benchmarking analysis for Cigna in relation to the selected public companies.

50.    With respect to the *Selected Precedent Transactions Analysis (Express Scripts),* the S-4/A fails to disclose whether Centerview performed any type of benchmarking analysis for Express Scripts in relation to the target companies.

51.    Finally, with respect to the *Discounted Cash Flow Analysis (Express Scripts)*, the S-4/A fails to disclose the individual inputs and assumptions utilized by Centerview to derive the discount rate range of 8.0% to 9.5%. The S-4/A further omits the implied terminal EBITDA multiple range resulting from the analysis. And the S-4/A does not disclose how Centerview treated stock-based compensation expense (*i.e.*, as a cash or non-cash expense). With respect to the *Discounted Cash Flow Analysis (Cigna)*, the S-4/A fails to disclose the individual inputs and assumptions utilized by Centerview to derive the discount rate range of 8.0% to 9.5%. The S-4/A

further omits the implied terminal EBITDA multiple range resulting from the analysis. And the S-4/A does not disclose how Centerview treated stock-based compensation expense (*i.e.*, as a cash or non-cash expense).

### Materially Incomplete and Misleading Disclosures Concerning Lazard's Financial Analyses

52.     With respect to the *Discounted Cash Flow Analysis (Express Scripts)*, the S-4/A fails to disclose the individual inputs and assumptions utilized by Lazard to derive the discount rate range of 8.0% to 9.0%. The S-4/A further omits the implied terminal EBITDA multiple range resulting from the analysis. And the S-4/A does not disclose how Lazard treated stock-based compensation expense (*i.e.*, as a cash or non-cash expense). With respect to the *Discounted Cash Flow Analysis (Cigna)*, the S-4/A fails to disclose the individual inputs and assumptions utilized by Lazard to derive the discount rate range of 8.0% to 9.0%. The S-4/A further omits the specific amount of Cigna's unlevered free cash flows utilized by Lazard in calculating the terminal value, as well as the implied terminal EBITDA multiple range resulting from the analysis. And the S-4/A does not disclose how Lazard treated stock-based compensation expense (*i.e.*, as a cash or non-cash expense).

53.     With respect to the *Selected Trading Company Analysis (Cigna)*, the S-4/A fails to disclose whether Lazard performed any type of benchmarking analysis for Cigna in relation to the selected public companies.

### Materially Incomplete and Misleading Disclosures Concerning the Flawed Process

54.     The S-4/A also fails to disclose material information concerning the sales process. For example, the S-4/A fails to state whether the confidentiality agreement Express Scripts entered into with Express Scripts Company A is still in effect and/or contains a DADW standstill provision that precludes Express Scripts Company A from making a topping bid for the Company. In

addition, the S-4/A states that Express Scripts had discussions with "counterparties" about potential transactions, but the S-4/A does not disclose whether any of those parties entered into a confidentiality agreement with Express Scripts and, if so, whether any of those parties currently are subject to a DADW standstill provision.

55.     The disclosure of the terms of any standstill provisions is crucial to Express Scripts stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company. That is especially important given that § 7.4(e) of the Merger Agreement prohibits Express Scripts from waiving or modifying confidentiality agreements, including standstill provisions. Whether the Board agreed to that provision knowing that its agreements with Express Scripts Company A, or any other party, contained such a standstill agreement, must be disclosed to Express Scripts stockholders before they decide on voting for or against the Proposed Transaction.

56.     Other details about the sales process have been omitted from the S-4/A, such as how many counterparties engaged in discussions with Express Scripts, the number of financial parties and strategic parties that were engaged in such discussions, and when those discussions ended. The S-4/A mentions numerous times that the Board considered those discussions when determining not to contact other parties and that a different party could offer more than Cigna. The information about the counterparties who engaged in discussions with Express Scripts is necessary for stockholders to decide that the Board met its fiduciary duties in agreeing to sell the Company.

57.     The process was led by Defendant Wentworth, yet the S-4/A fails to disclose whether the Board was aware of Defendant Wentworth's meetings with Cigna's CEO in November and December 2017 at the time of those meetings.

58.     Express Scripts' management prepared financial projections that were discussed with the Board and provided to Cigna, Centerview and/or Lazard, yet those projections were not disclosed in the S-4/A. Specifically, the S-4/A fails to disclose: (a) the long-term financial plan presented to the Board by Defendant Wentworth on December 13, 2017; (b) the unaudited prospective financial information provided to Centerview on December 16, 2017; (c) the unaudited prospective financial information provided to Cigna on December 27, 2017; (d) the updated unaudited prospective financial information provided to Centerview on January 11, 2018; (e) the standalone financial projections discussed by Centerview and Cigna's financial advisor during the week of January 15, 2018; (f) the impact of U.S. tax reform on previously provided unaudited prospective financial information as discussed with Cigna on January 23, 2018; (g) the Board's assessment of Express Scripts' value as a standalone healthcare company as discussed between Defendant Wentworth and Cigna's CEO on February 18, 2018; and (h) the financial projections discussed between Express Scripts, Cigna, Centerview, Lazard, Cigna's financial advisor, Express Scripts' legal advisor and Cigna's legal advisor from March 2, 2018 to March 8, 2018.

59.     Express Scripts' financial advisors for the Proposed Transaction, Lazard and Centerview, provided financial analyses to the Board throughout the sales process. Those analyses were not disclosed in the S-4/A, including: (a) the preliminary analysis of a transaction between Express Scripts and Express Scripts Company A as discussed with the Board on June 27 and 28, 2018; (b) Centerview's preliminary financial analyses of Cigna's initial proposal, as discussed with the Board on January 15, 2018; and (c) Centerview's and Lazard's preliminary financial analysis of Cigna's second proposal, as discussed with the Board on February 20, 2018.

60.     The S-4/A notes that Lazard confirmed that it did not have any engagements with Cigna or its known affiliates in the previous three years, had not earned fees from work performed

for Cigna or its known affiliates, and there were no relationships to Cigna for the team handling the Proposed Transaction. The S-4/A does not include the same disclosures about Centerview, which only stated that it had not been engaged to provide services to Cigna or had received compensation from Cigna in the previous two years. The S-4/A does not disclose whether Centerview had been engaged by or received compensation from affiliates of Cigna, nor does the S-4/A disclose whether there are relationships to Cigna for the Centerview team handling the Proposed Transaction.

61.     Similarly, the S-4/A fails to disclose key information on potential conflicts of interest concerning Lazard. The S-4/A states that Lazard had acted as Express Scripts financial advisor when it acquired CareCore National Group, LLC (aka eviCore healthcare). However, no mention is made of the compensation earned by Lazard for those services. Given the expected $50 million fee to be paid to Lazard in connection with the Proposed Transaction, it is crucial that stockholders know if Lazard had an incentive to steer the Board into approving the Proposed Transaction.

62.     The S-4/A notes that Express Scripts discussed Lazard's ability to deliver analyses on "the timetable that representatives of Cigna had indicated to representatives of Express Scripts." Yet there is no information about what that timetable was, when it was discussed with Express Scripts, whether the Board was aware of the timetable, whether Cigna provided any pressure to keep the sales process to the timetable and whether the sales process was conducted to meet the timetable provided by Cigna.

63.     The sales process was led by Defendant Wentworth, CEO of Express Scripts. The S-4/A notes that Defendant Wentworth entered into an agreement with Cigna, where he will receive an annual salary of $1.5 million, an annual target equity award of $6 million, and $6 million

in restricted stock. Yet there is nothing in the S-4/A to indicate when discussions took place between Cigna and Defendant Wentworth or whether the Board was aware of the discussions.

64.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Express Scripts stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

65.     In addition, the Individual Defendants knew or recklessly disregarded that the S-4/A omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

66.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4/A before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4/A omits the material information referenced above and contains the incomplete and misleading information referenced above.

67.     Further, the S-4/A indicates that on March 7, 2018, Centerview and Lazard reviewed with the Board their financial analyses of the Merger Consideration delivered to the Board oral opinions, which were confirmed by delivery of written opinions of the same date to the effect that the Merger Consideration was fair, from a financial point of view, to Express Scripts stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Centerview's and Lazard's financial analyses which has been omitted from the S-4/A, and thus knew or should have known that such information has been

omitted.

68.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

69.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

70.     Defendants have filed the S-4/A with the SEC with the intention of soliciting Express Scripts stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4/A, which fails to provide the material information referenced above.

71.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Express Scripts, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

72.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

73.     Specifically, and as detailed above, the S-4/A violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Express Scripts shares and the financial analyses performed by Centerview and Lazard in support of their fairness opinions; and (iii) the sales process.

74.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4/A is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4/A states that Centerview and Lazard reviewed and discussed their financial analyses with the Board during various meetings including on March 7, 2018, and further states that the Board relied upon Centerview's and Lazard's financial analyses and fairness opinions in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4/A, rendering the sections of the S-4/A identified above to be materially incomplete and misleading.

75.     The misrepresentations and omissions in the S-4/A are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

76.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of Express Scripts within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Express Scripts and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4/A filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

78.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4/A and other statements alleged by Plaintiff to be misleading prior to the time the S-4/A was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4/A at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4/A.

80.     In addition, as the S-4/A sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4/A purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

81.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

82.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and his counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC unless and until Defendants agree to include the material information identified above in any such amendment;

C.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4/A;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 16, 2018

**RIGRODSKY & LONG, P.A.**

By:   */s/ Brian D. Long*
          Brian D. Long (#4347)

**OF COUNSEL:**

Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220

**ROWLEY LAW PLLC**

Wilmington, DE 19801
Shane T. Rowley
Telephone: (302) 295-5310
Danielle Rowland Lindahl
Facsimile: (302) 654-7530
50 Main Street, Suite 1000
Email: bdl@rl-legal.com
White Plains, NY 10606
Email: gms@rl-legal.com
Telephone: (914) 400-1920
Facsimile: (914) 301-3514
*Attorneys for Plaintiff*
Email: srowley@rowleylawpllc.com